**Jin KWON, Petitioner,**

v.

**Michael COMFORT, Acting District Director, United states Immigration and Naturalization Service, Denver, Colorado, Respondent.**

**No. CIV. A. 01–S–702.**

United States District Court, D. Colorado.

June 6, 2001.

---

Jim Salvator, Lafayette, CO, for petitioner.

Mark S. Pestal, United States Attorney's Office, Denver, CO, for respondent.

## ORDER

SPARR, Senior District Judge.

THIS MATTER came before the Court on April 27, 2001 for hearing on Petitioner's Application for a Writ of Habeas Corpus, filed April 17, 2001. The Court has reviewed the entire case file and heard the arguments of counsel, and is fully advised in the premises.

### BACKGROUND

Petitioner is a native and citizen of Korea, who last entered the United States on March 3, 1989, at or near Los Angeles, California. (Exhibits 1, Immigrant Visa and Alien Registration; Exhibit 2, Notice to Appear). He is a lawful permanent resident of the United States. (Application, page 3; Exhibit 3). Petitioner is in immigration proceedings as a result of his criminal conviction for Second and Third Degree Sexual Assault for which he was sentenced to 9 months in jail and 8 years probation. This qualifies him as an aggravated felon pursuant to 8 U.S.C. § 1101(a)(43)(A). (Exhibit 3; Exhibit 6, Criminal History).

As a result of his conviction, Petitioner has been deemed an aggravated felon and removal proceedings have been instituted against him. The INS has charged that Petitioner is subject to removal as an aggravated felon pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).

As an aggravated felon, Petitioner's detention is required pursuant to 8 U.S.C. § 1226(c)(1)(B). Consequently, Petitioner has been denied bond by an immigration judge.

### APPLICABLE STATUTE

On September 30, 1996, the President signed into law the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").[1] The IIRIRA reformulated the underlying objectives and structure of immigration law after formidable enforcement and efficiency problems proved prior legislation inadequate. By enacting the IIRIRA, Congress sought to restore credibility to the immigration process by identifying and removing criminal and illegal aliens from our country promptly, and eliminating loopholes used by aliens to thwart enforcement of the immigration laws. These objectives were translated into legislation through the adoption of an interrelated statutory structure designed to streamline the removal process and expeditiously remove criminal aliens from this country. Taken together, the IIRIRA provisions establish an interrelated statutory structure designed to put certain targeted criminal aliens on a fast track for removal. Detention pending removal proceedings is mandated, discretionary relief from removal for aggravated felons is barred, judicial review is eliminated, and a 90–day time limit is given by way of instruction to INS for physical removal after a final administrative order is entered. These other provisions are intended to work with the detention provision by decreasing the amount of time criminal aliens

1. Pub.L. 104–208, 110 Stat. 3009, 3009–598 (Sept., 30, 1996), *as amended by* the Extension of Stay in United States for Nurses Act of October 11, 1996, Pub.L. No. 104–302, 110 Stat. 3656.

are detained without bond and help speed the process along.

Section 1226 mandates the detention of most criminal aliens pending removal proceedings and precludes judicial review of discretionary administrative decisions regarding such detention:

(c) Custody issues and release procedures.

(1) Custody.—The Attorney General shall take into custody any alien who—

. . . . . . .

(B) is deportable by reason of having committed any offense covered in [8 U.S.C. § 1227(a)(2)(A)(ii) ]

(2) Release.—The Attorney General may release an alien described in paragraph (1) only if the [alien has been admitted into the Witness Protection Program] . . . , and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.

8 U.S.C. § 1226(c) (1998).

Section 1226 applies only to aliens during removal proceedings. Once a final administrative order is entered, the alien's detention and any judicial review thereof is governed by 8 U.S.C. § 1231. It is clearly the intent of Congress that this immigration reform legislation "mandated detention of most criminal aliens until their removal" and "envisions that the detention and removal of criminal aliens should be a top priority of INS enforcement." [2]

Petitioner's constitutional argument regarding § 1226 fails. The Seventh Circuit flatly rejected a similar constitutional challenge, holding that "Section 1226(c) is plainly within the power of Congress." *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir.1999). In so doing, the court rejected

Judge Babcock's decision in *Martinez v. Greene*, 28 F.Supp.2d 1275 (D.Colo.1998) as unpersuasive. *Parra*, 172 F.3d at 958. The Eleventh Circuit has also indicated that it found Section 1226(c) a proper exercise of congressional authority. *See Richardson v. Reno*, 162 F.3d 1338, 1364 fn. 119 (11th Cir.1998), *judgment vacated*, 526 U.S. 1142, 119 S.Ct. 2016, 143 L.Ed.2d 1029 (1999), *reaffirmed on remand*, 180 F.3d 1311 (11th Cir.1999). In *Richardson*, the Eleventh Circuit found that "Congress acts well within its plenary power in mandating detention of a criminal alien with an aggravated felony conviction facing removal proceedings." *Richardson*, 162 F.3d at 1363 fn. 119 (citing 8 U.S.C. § 1226(c)). "This poses no constitutional issue . . . The Supreme Court has determined that bail need not be provided in all immigration cases." *Id.* (citations omitted).

The Government notes that Petitioner identifies certain cases which have disagreed with *Parra*, mostly unpublished decisions (and, in one case, a magistrate's recommendation). Many published cases have followed *Parra*. *Okeke v. Pasquarell*, 80 F.Supp.2d 635 (W.D.Tex.2000); *Reyes v. Underdown*, 73 F.Supp.2d 653 (W.D.La. 1999); *Jacques v. Reno*, 73 F.Supp.2d 477, 483 (M.D.Pa.1999); *Alikhani v. Fasano*, 70 F.Supp.2d 1124 (S.D.Cal.1999); *Edwards v. Blackman*, 48 F.Supp.2d 477 (M.D.Pa. 1999); *Galvez v. Lewis*, 56 F.Supp.2d 637 (E.D.Va.1999); *Diaz–Zaldierna v. Fasano*, 43 F.Supp.2d 1114 (S.D.Cal.1999).

*CONGRESSIONAL REGULATION OF IMMIGRATION*

■ Congress' near-complete power over immigration transcends the specific grant of authority in Article 1, Section 8 of the Constitution, and derives from the "inherent and inalienable right of every sov-

**2.** Controlling Criminal and Illegal Aliens: Hearings on Criminal Aliens and Border Patrol Funding Before the House Judiciary's Subcommittee on Immigration and Claims, 1999 WL 8086803 (statement of Lamar Smith, Subcommittee Chairman) (1999).

ereign and independent nation" to determine which aliens it will admit or expel. *Fong Yue Ting v. United States,* 149 U.S. 698, 711, 13 S.Ct. 1016, 37 L.Ed. 905 (1893). Regulation of the relationship between the United States and aliens has been committed to the political branches of the Federal Government. *Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) ("[T]he power to admit or exclude aliens is a sovereign prerogative."). *Flemming v. Nestor,* 363 U.S. 603, 616, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960) describes the power of Congress to fix the conditions under which aliens are to be permitted to enter and remain in this country as "plenary". *Mahler v. Eby,* 264 U.S. 32, 39, 44 S.Ct. 283, 68 L.Ed. 549 (1924) (describes as "unquestioned" the power of Congress "to rid the country of persons who have shown by their career that their continued presence here would not make for the safety or welfare of society").

■■■ An immigration law is constitutional if it is based upon a "facially legitimate and bona fide reason." *Fiallo v. Bell,* 430 U.S. at 794–95, 97 S.Ct. 1473. "Once a facially legitimate and bona fide reason is found, courts will neither look behind the exercise of discretion, nor test it by balancing its justification against the constitutional interest asserted by those challenging the statute." *Campos v. INS,* 961 F.2d 309, 316 (1st Cir.1992) (citing *Fiallo,* 430 U.S. at 794–95, 97 S.Ct. 1473).

■■ The plenary power doctrine extends to immigration detention, both because the power to detain is a necessary element of the power to deport and because release may jeopardize the public safety and compromise the government's enforcement objectives.

■■■ Congress' plenary power over immigration extends to all non-citizens, including permanent resident aliens. Aliens

[w]hen legally admitted ... have come at the Nation's invitation, as visitors or permanent residents, to share with us the opportunities and satisfactions of our land .... So long, however, as aliens fail to obtain and maintain citizenship by naturalization, they remain subject to the plenary power of Congress to expel them under the sovereign right to determine what noncitizens shall be permitted to remain within our borders.

*Carlson v. Landon,* 342 U.S. 524, 534, 72 S.Ct. 525, 96 L.Ed. 547 (1952) (upholding prolonged immigration detention of permanent resident alien).

The Supreme Court has recently applied the principles of Carlson in a case involving an INS regulation mandating immigration detention of certain juveniles by category. *Reno v. Flores,* 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). The case presented substantially the same issues presently at bar, with two exceptions. First, the *Flores* respondents challenged an administrative regulation rather than a statute. Second, the *Flores* respondents sought to protect a class of non-criminal, juvenile aliens. The Court applied "the (unexacting) standard of rationally advancing some legitimate governmental purpose" and upheld the regulation. *Id.* 507 U.S. at 306, 113 S.Ct. 1439. That decision would seem to dictate the same result in the instant case, since the natural expectation would be equal or greater judicial deference to a statute, as opposed to an administrative regulation, and a far less solicitous and protective posture toward adult criminals, as opposed to non-criminal children.

■■ As an alien properly in the INS's jurisdiction pending the final agency order, Petitioner can claim no "fundamental" interest in release from INS custody, and hence no entitlement to heightened judicial review. The Court agrees with the Gov-

ernment's contention that they find no case in which the Supreme Court or the Tenth Circuit has ever applied strict scrutiny to an immigration statute. Even where a fundamental right is arguably at stake, the courts have applied the rational basis review in the context of immigration cases. *See, e.g., Adams v. Howerton*, 673 F.2d 1036, 1041 (9th Cir.), *cert. denied*, 458 U.S. 1111, 102 S.Ct. 3494, 73 L.Ed.2d 1373 (1982); *Anetekhai v. INS*, 876 F.2d 1218, 1221–22 (5th Cir.1989); *Almario v. Attorney General*, 872 F.2d 147, 150–51 (6th Cir.1989).

■ There can be no question that the detention requirement of Section 1226(c)(1) advances a legitimate governmental purpose. This provision seeks to prevent deportable criminal aliens from absconding or committing further criminal acts during proceedings to effect their removal. *See Parra*, 172 F.3d at 958. Preventing flight or danger to the community have long been considered legitimate regulatory goals. The goal of protecting the community is a compelling one. Where, as here, an alien is involved, the interest of Congress is heightened. These goals have been paramount among the immigration enforcement concerns of Congress and the Attorney General over the past decade, with mounting emphasis in the past several years as the problems of widespread recidivism and aliens absconding have come increasingly to light.

The statutory provision challenged here is also an important component of both congressional and executive policy the success of which would significantly affect the well being of the United States and its inhabitants. There can be no question that removing deportable criminal aliens from the United States, and preventing them from absconding or committing further crimes in the process, are facially legitimate and bona fide goals. *See, e.g., Salerno*, 481 U.S. at 747, 107 S.Ct. 2095

("There is no doubt that preventing danger to the community is a legitimate regulatory goal.") Nor is there any doubt, in light of the disturbing rates of both aliens absconding and recidivism which have been found, that the detention requirement rationally advances these objectives. Hence, Section 1226(c)(1) rests on a facially legitimate basis.

As the Seventh Circuit has explained in *Parra v. Perryman*, even prior to the IIRIRA's enactment, aliens had no entitlement to release pending the conclusion of deportation proceedings, 172 F.3d at 958. Once deportation proceedings had begun, the alien's detention was not contrary to the Constitution or laws of the United States. The Attorney General possessed wide discretion to grant or deny an alien's request for release pending the conclusion of those proceedings. The alien had no right to bond pending deportation since the then-governing immigration statute gave the Attorney General absolute discretion to decide whether to release aliens pending proceedings. If an alien's release under the prior standards was merely within the Attorney General's wide discretion, petitioner cannot now claim a "constitutional entitlement" to his release pending the conclusion of removal proceedings. *See INS v. Chadha*, 462 U.S. 919, 955, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (indicating that Congress retains the power to narrow the scope of its delegated authority at any time); *see also Greenholtz v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1, 11, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (a statute which "provides no more than a mere hope that the benefit will be obtained ... is not protected by due process").

Petitioner's detention is not indefinite but is limited to the time it takes to adjudicate the removal proceedings, consider any request Petitioner makes for relief from

removal, such a claim under the United Nations Convention Against Torture and, if relief is rejected, to execute the final order of removal. If removal is not effected within the 90-day statutory period, then the INS district director may release Petitioner under an order of supervision. *See* 8 C.F.R. § 241.4 (1998).

 With regard to Petitioner's argument that he is not "deportable" pursuant to § 1226 because, as of the time of the hearing on this Petition, he had only *been charged with being deportable* as opposed to the issue having been determined, the Court rejects that innovative interpretation of the statutory language. The language of § 1226(c) refers to individuals who are "deportable by reason of having committed any offense covered in [8 U.S.C. § 1227(a)(2)(A)(ii) ]." Consequently, the term 'deportable' is defined by the following phrase which refers to the commission of certain crimes. Petitioner has admitted that he was found guilty of the underlying felony. The Court will not create a loophole where none exists by finding that § 1226(c) does not apply to Petitioner because he has not been specifically found to be deportable by an immigration judge.

It is therefore ORDERED that Petitioner's Petition for Writ of Habeas Corpus is Denied.